**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| SINOSTAR GLOBAL LTD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. _____ |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| RAKUTEN KOBO, INC. | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## COMPLAINT

Sino Star Global Limited ("Plaintiff" and "SinoStar"), by and through its attorneys, for its Complaint for patent infringement against Rakuten Kobo, Inc. ("Kobo" or "Defendant") and demanding trial by jury, hereby alleges as follows:

### I.   NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq*., to enjoin and obtain damages resulting from Defendant's unauthorized use, sale, and offer to sell in the United States of products and/or systems that infringe Plaintiff's United States patent, as described herein.

2.      Defendant manufactures, provides, uses, sells, offers for sale, imports, and/or distributes infringing products and services; and encourages others to use its products and services in an infringing manner.

3.      Plaintiff seeks past and future damages and prejudgment and post-judgment interest for Defendant's infringement of U.S. Patent Nos. 5,909,207 (the "'207 patent"), 7,009,596 (the "'596 patent"), 7,079,111 (the "'111 patent"), 7,304,635 (the "'635 patent"), and 7,342,569 (the "'569 patent").

1

## II.  PARTIES

4.      Plaintiff Sino Star Global Limited is a limited company organized and existing under the laws of the British Virgin Islands.

5.      On information and belief, Defendant is a limited partnership organized and existing under the laws of Canada, with a principal place of business at 35 Liberty Street, Suite 101, Toronto, Ontario, Canada M6K 1A7. Upon information and belief, Defendant may be served with process at the same address.

## III.  JURISDICTION AND VENUE

6.      This is an action for patent infringement which arises under the patent laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 283, 284, and 285.

7.      This Court has exclusive jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8.      Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its business in this forum, including (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this judicial district.

9.      Defendant has used the patented inventions within this state, thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas and this Judicial District.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services

provided to persons or entities in Texas and this Judicial District.  Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within this Judicial District.  Defendant has committed such purposeful acts and/or transactions in this Judicial District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b) because Defendant is a foreign entity and has transacted business in this judicial district and has committed acts within this judicial district giving rise to this action, directly and/or through subsidiaries; and/or Defendant has committed and/or induced acts of patent infringement in this Judicial District directly and/or through subsidiaries.

11.     Defendant has transacted business in this judicial district and has committed acts within this judicial district giving rise to this action, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others); and/or Defendant has committed and/or induced acts of patent infringement in this Judicial District directly and/or through subsidiaries.

## IV.  FACTUAL BACKGROUND

12.     Plaintiff is the owner of a patent portfolio of 23 US Patents and foreign equivalents spanning 6 patent families ("Patent Portfolio").

13.     The Patent Portfolio was developed by a small pioneering company, E-Book Systems Pte Ltd ("E-Book Systems") in the late 90's before the ascension of the Ebook industry.

14.     E-Book Systems, while developing the E-Book Patent Portfolio, began to commercialize its patented technology by offering E-book and multimedia software.

15.     E-Book Systems products included: "FlipBooks," which are electronic books, magazines, or other publications that allows users to flip electronic pages similar to paper pages; "FlipViewer," which is viewing and creation software for FlipBooks; and a DRM Solution to help protect content providers' rights to the E-book materials.

16.     E-Books Systems had such commercial success that it expanded with additional offices in California and China.

17.     However, as larger market players have taken over the E-book industry, E-Book Systems has struggled to maintain an effective market share. E-Book Systems continued to compete in the U.S. E-book market, but was forced to heavily downsize on personnel and production.

18.     Subsequently, Sino Star acquired the Patent Portfolio from E-Book Systems.

19.     Plaintiff is the owner of the entire right, title, and interest of the 5,909,207 (the "'207 patent"), 7,009,596 (the "'596 patent"), 7,079,111 (the "'111 patent"), 7,304,635 (the "'635 patent"), and 7,342,569 (the "'569 patent") (collectively "Asserted Patents"), including the right to recover for past infringement.

## V.  COUNTS OF PATENT INFRINGEMENT

20.     Plaintiff alleges that Defendant has infringed and continue to infringe the following United States patents (collectively the "Asserted Patents"):

U.S. patent No. 5,909,207 (the '207 Patent) (Exhibit A)
U.S. patent No. 7,009,596 (the '596 Patent) (Exhibit B)
U.S. patent No. 7,079,111 (the '111 Patent) (Exhibit C)
U.S. patent No. 7,304,635 (the '635 Patent) (Exhibit D)
U.S. patent No. 7,342,569 (the '569 Patent) (Exhibit E)

**COUNT ONE**
**INFRINGEMENT OF U.S. PATENT 5,909,207**

21.     Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

22.     The '207 Patent, entitled "Browsing system and method for computer information", was filed on August 26, 1996 and issued on June 1, 1999.

**Technical Description**

23.     The '207 patent describes a computer system that allows users to browse documents similar to how they would read a book. '207 patent, abstract, 4:21-6:4. According to the '207 patent, existing methods for viewing electronic documents through a computer monitor screen required scrolling up or down or jumping to a particular point in the document with a mouse or hyperlink. *Id.*, 1:20-29. "However, people do not find this a particularly convenient way to view a document, as compared with a book." *Id.*, 1:30-32. A book reader is able to flip through the pages, quickly jump to the approximate location of passages of interest, and flip forwards and backwards, useful operations lacking in conventional computer systems. *Id.*, 2:9-3:12.

24.     The '207 patent is a technical solution to this identified problem that allows users of existing computer systems to navigate electronic documents in a manner akin to how they would browse a book. *Id.*, 7:36-26:51. The invention provides operations that enable users to jump through documents similarly to how they would browse. *Id*. The browsing operations are enabled by an inventive combination of mechanisms and sensors of the browsing device that measure user inputs such as thumb movements. *Id*.

**Direct Infringement**

25.     On information and belief, Defendant, without authorization or license from Plaintiff, have been and is presently directly infringing the '207 patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using, (including for testing purposes), selling and offering for sale articles infringing one or more claims of the '207 patent.  Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271.  Exemplary infringing instrumentalities include the e-readers available at https://us.kobobooks.com, including, but not limited to the Kobo Aura One, and substantially similar devices ("Accused Instrumentalities").

26.     On information and belief, the Accused Instrumentalities are a non-limiting example that meet all limitations of claim 1 of the '207 patent, either literally or equivalently.

27.     Claim 1 of the '207 patent states:

A computer-based information browsing device comprising:

a body having a sensor device disposed on a sensor area of said body that detects a position and a force of an instrument applied to said sensor device;

at least one set of sensors actuable by said instrument, disposed on said body, and configured to produce at least one state signal when at least one of said set of sensors is actuated by said instrument;

a transducer circuit connected to said sensor device which converts the force and position detected by said sensor device into at least one transducer signal; and

an output port which outputs the at least one transducer signal and said least one state signal to a computer which hosts a set of information, said at least one transducer signal and said at least one state signal forming at least one of a direction of movement command, a change of speed command, a jump to a specified location command, and a bookmark command used by said computer to manipulate a displayed image of said set of information.

28.     Specifically, the Accused Instrumentalities made, used, sold, and/or offered for sale by Defendant is an information browsing device:



29.     The Accused Instrumentalities have a body having a sensor device disposed on a sensor area of the body that detects a position and a force of an instrument applied to said sensor device:

# Using the touch screen

## When your eReader is on, you can touch the screen to open books, turn pages, select items, and more. Here are a few gestures you might find useful.

The Accused Instrumentalities has a capacitive touch screen such that when a user touches the screen, an electrostatic field is disturbed at that point and the position is detected.

30.     The Accused Instrumentalities have at least one set of sensors actuable by said instrument, disposed on said body, and configured to produce at least one state signal when at least one of said set of sensors is actuated by said instrument:

1. While reading, tap the middle of the screen.
   The Reading menu will appear.



2.

For example, when the middle of the above screen is pressed, the sensor produces a signal.

31.     The Accused Instrumentalities include a transducer circuit connected to said sensor device which concerts the force and position detected by said sensor device into at least one transducer signal. For example, when the middle of the above screen is pressed, the transducer circuit converts the force and position into a transducer signal such that the "Reading Menu" appears for additional controls.

32.     The Accused Instrumentalities include an output port which outputs the at least one transducer signal and said at least one state signal to a computer which hosts a set of information, said at least one transducer signal and said at least one state signal forming at least one of a direction of movement command, a change of speed command, a jump to a specified location command, and a bookmark command used by said computer to manipulate a displayed image of said set of information:

**Reading stats icon:** See your book reading progress.

**Table of contents icon:** See the table of contents.

**Reading Settings icon:** Adjust onscreen controls, page appearance and more.

**Menu icon:** Write a review, see book details, and more.

**Chapter back icon:** Go to the previous chapter.

**Chapter forward icon:** Go to the next chapter.

**Circle icon:** Drag to skim through pages.

**Dot icon:** Tap to go back to a previous page you've opened.

**Search icon:** Tap to search for keywords in your book.

**Annotation icon:** Tap to see the notes and highlights you've created.

In the Accused Instrumentalities, the transducer signal is outputted to the processor, which hosts a set of information. The transducer signal and state signal are used to form a specified command, such as jump to the next or previous chapter.

**<u>Willful Infringement</u>**

33.     Defendant has had actual knowledge of the '207 patent since its receipt of notice and licensing letters regarding the Asserted Patents as early as August 2015.

34.     Defendant has had actual knowledge of the '207 patent, gained in its own prosecution activities.

35.     Specifically, the '207 was cited in the prosecution of Defendant's Patent Application No. US14/575,988.

36.     Defendant has had actual knowledge of the '207 patent as of service of this Complaint.

37.     Notwithstanding this knowledge, Defendant continues to knowingly or with reckless disregard willfully infringe the '207 patent.  Defendant has thus had actual notice of infringement of the '207 patent no later than August of 2015, and continue to act despite an objectively high likelihood that its actions constitute infringement of Plaintiff's valid patent rights, either literally or equivalently.

38.     This objective risk was either known or so obvious that it should have been known to Defendant.  Accordingly, Plaintiff seeks enhanced damages and reimbursement of its reasonable attorney fees pursuant to 35 U.S.C. §§ 284 and 285.

**Joint and Indirect Infringement**

39.     Defendant is knowingly inducing its customers and/or end users to directly infringe the '207 patent, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

40.     Defendant's inducement includes, for example, providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe the '207 patent. Defendant's inducement also includes selling products and services, including eBooks, designed to be used with the Accuse Instrumentalities in an infringing manner.  The Accused Instrumentalities are designed in such a way that when they are used for their intended purpose, the user infringes the '207 patent, either literally or equivalently.  Defendant knows and intends that customers that purchase the Accused Instrumentalities will use those products for their intended purpose.  For example, Defendant's United States website https://us.kobobooks.com instructs customers to use the Accused Instrumentalities in numerous infringing applications. Defendants website also sells eBooks designed to be used with the Accused Instrumentalities in an infringing manner. In addition, Defendant specifically intends that its customers, such as United States distributors, retailers and consumer product companies, will import, use, and sell Accused Instrumentalities in the United States in order to serve and develop the United States market for Defendant's Accused Instrumentalities.

41.     Upon information and belief, Defendant contracts with its customers in a manner that allows Defendant to control its customer's use of the Accused Instrumentalities, such as

directing the time of use of the Accused Instrumentalities. For example, Defendant has rental and other agreements with its customers that specify the manner in which the Accused Instrumentalities are to be used which leads to direct infringement of the Accused Instrumentalities.

42.     Defendant has knowingly contributed to direct infringement by its customers by having imported, sold, and/or offered for sale, and knowingly importing, selling, and/or offering to sell within the United States the Accused Instrumentalities which are not suitable for substantial non-infringing use and which are especially made or especially adapted for use by its customers in an infringement of the asserted patent.

43.     As a result of Defendant's infringement, Plaintiff has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT TWO**
**INFRINGEMENT OF U.S. PATENT 7,009,596**

44.     Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

45.     The '596 Patent, entitled "Programmable virtual book system", was filed on January 21, 2004 and issued on March 7, 2006.

**Technical Description**

46.     The '596 patent describes a virtual book-like interface for viewing electronic documents stored on a computer. '596 patent, abstract, 1:30-46. According to the '596 patent, existing interfaces for viewing electronic documents required scrolling up or down or jumping to a particular point in the document with a mouse or hyperlink. *Id.*, 1:49-56. "However, people do

not find this a particularly convenient way to view a document, as compared with a book." *Id.*, 1:57-59. A book reader is able to flip through the pages, quickly jump to the approximate location of passages of interest, and flip forwards and backwards, useful operations incompatible with existing interfaces for viewing electronic documents. *Id.*, 2:36-3:23.

47.     The '596 patent describes an inventive electronic interface that provides a technical solution to the described problems of existing interfaces in navigating electronic documents. *Id.*, 5:13-6:15. The '596 patent describes the inventive interface as a "virtual book interface" that can be used in conjunction with existing computer and electronic systems to browse documents stored thereon in an efficient manner similar to how one would browse a book. *Id.*, 7:10-30. Compared to inefficient prior art systems, the invention provides familiar operations that enable users to jump through documents similarly to how they would read a book. *Id.*, 7:32-14:37.

**<u>Direct Infringement</u>**

48.     On information and belief, Defendant, without authorization or license from Plaintiff, have been and is presently directly infringing the '596 patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using, (including for testing purposes), selling and offering for sale articles infringing one or more claims of the '596 patent.  Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271.  Exemplary infringing instrumentalities include the e-readers available at https://us.kobobooks.com, including but not limited to the Kobo Aura One, and substantially similar devices ("Accused Instrumentalities").

49.     On information and belief, the Accused Instrumentalities are a non-limiting example that meet all limitations of dependent claim 5 of the '596 patent, either literally or equivalently.

50.     Claim 5 of the '596 patent states:

A method for controlling an electronic book, comprising steps of:

controlling at least a display of said electronic book with an electronic book behavior specification, said electronic book behavior specification containing both a static specification and a dynamic specification, said dynamic specification configured to allow an electronic book behavior to be initiated or modified via a user-initiated command or an automatically-initiated command, wherein said step of controlling said electronic book with a dynamic specification comprises at least one of:

controlling event triggered page flipping;

controlling an electronic book auto-flipping; and

controlling an electronic book auto-narration.

wherein said step of controlling said electronic book with a dynamic specification comprises:

modifying the static specification within the electronic book behavior specification.

51.     Specifically, Defendant makes, uses, sells, offers for sale its Accused

Instrumentalities which perform a method for controlling an electronic book:




# Using the touch screen

**When your eReader is on, you can touch the screen to open books, turn pages, select items, and more. Here are a few gestures you might find useful.**

52.     The Accused Instrumentalities control the display of the electronic book with an electronic book behavior specification, the electronic book behavior specification containing a static specification:



The Accused Instrumentalities controls a display of the electronic book with an electronic book behavior specification (e.g., Kobo operating system/firmware). The electronic book behavior specification contains a static specification, which dictates how the Accused Instrumentalities display electronic books by default, as an example. For example, as shown on the right, the Accused Instrumentalities comes with default settings for "page turning," font, font size,

margins, justification, and line spacing, among other default settings:



53.    The electronic book behavior specification of the Accused Instrumentalities contain a dynamic specification, said dynamic specification configured to allow an electronic book behavior to be initiated or modified via a user-initiated command or an automatically-initiated command, wherein said step of controlling said electronic book with a dynamic specification comprises at least one of controlling event triggered page flipping:



The Accused Instrumentalities' behavior specification further includes a dynamic specification configured to allow an electronic book behavior to be initiated or modified via a user-initiated command or automatically-initiated command. The step of controlling the electronic book with

a dynamic specification comprises controlling event triggered page flipping. As shown above, the Accused Instrumentalities have different settings for page turning, allowing a user to tap on different portions of a page to turn the page.

54.     In the step of controlling said electronic book with a dynamic specification, the Accused Instrumentalities modify the static specification within the electronic book behavior specification:

# Changing text and font options on your Kobo eReader

Your eReader offers several different sizes of text for most books. You can adjust the text size, fonts, line spacing, and justification to make reading easier on your eyes. Please note that if the book you're reading is a PDF file, you can't change the size or style of the text.
 **Notes:**

- When you change the way text looks, your eReader remembers your preferred size and style, and applies it to other books you're reading.

The Accused Instrumentalities' dynamic specification comprises modifying the static specification within the electronic book behavior specification. The static specification includes default settings for font, font size, margins, etc. as non-limiting examples. As shown above, these settings can be modified via a user-initiated command, such that the new settings become the default settings.

**Willful Infringement**

55.     Defendant has had actual knowledge of the '596 patent since its receipt of notice and licensing letters regarding the Asserted Patents as early as August 2015.

56.     Additionally, Defendant has had actual knowledge of the '596 patent as of service of this Complaint.

57.     Notwithstanding this knowledge, Defendant continues to knowingly or with reckless disregard willfully infringe the '596 patent.  Defendant has thus had actual notice of infringement of the '596 patent no later than August of 2015 and continue to act despite an objectively high likelihood that its actions constitute infringement of Plaintiff's valid patent rights, either literally or equivalently.

58.     This objective risk was either known or so obvious that it should have been known to Defendant.  Accordingly, Plaintiff seeks enhanced damages and reimbursement of its reasonable attorney fees pursuant to 35 U.S.C. §§ 284 and 285.

**Joint and Indirect Infringement**

59.     Defendant is knowingly inducing its customers and/or end users to directly infringe the '596 patent, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

60.     Defendant's inducement includes, for example, providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe the '207 patent. Defendant's inducement also includes selling products and services, including eBooks, designed to be used with the Accuse Instrumentalities in an infringing manner.  The Accused Instrumentalities are designed in such a way that when they are used for their intended purpose, the user infringes the '207 patent, either literally or equivalently.  Defendant knows and intends that customers that purchase the Accused Instrumentalities will use those products for their intended purpose.  For example, Defendant's United States website https://us.kobobooks.com instructs customers to use the Accused Instrumentalities in numerous infringing applications.

Defendants website also sells eBooks designed to be used with the Accused Instrumentalities in an infringing manner. In addition, Defendant specifically intends that its customers, such as United States distributors, retailers and consumer product companies, will import, use, and sell Accused Instrumentalities in the United States in order to serve and develop the United States market for Defendant's Accused Instrumentalities.

61.     Upon information and belief, Defendant contracts with its customers in a manner that allows Defendant to control its customer's use of the Accused Instrumentalities, such as directing the time of use of the Accused Instrumentalities. For example, Defendant has rental and other agreements with its customers that specify the manner in which the Accused Instrumentalities are to be used which leads to direct infringement of the Accused Instrumentalities.

62.     Defendant has knowingly contributed to direct infringement by its customers by having imported, sold, and/or offered for sale, and knowingly importing, selling, and/or offering to sell within the United States the Accused Instrumentalities which are not suitable for substantial non-infringing use and which are especially made or especially adapted for use by its customers in an infringement of the asserted patent.

63.     As a result of Defendant's infringement, Plaintiff has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT THREE**
**INFRINGEMENT OF U.S. PATENT 7,079,111**

64.     Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

65.     The '111 Patent, entitled "Computer based browsing computer program product, system and method", was filed on October 3, 2002 and issued on July 18, 2006.

**Technical Description**

66.     The '111 patent describes a browsing program, system, and method for arranging electronic information into book format. '111 patent, abstract. The configuration of the book format enables computer systems to present electronic documents to users in a manner similar to a book, rather than the appearance of a conventional electronic document. *Id.*, 36:41-40:40.

67.     According to the '111 patent, existing interfaces for viewing electronic documents required scrolling up or down or jumping to a particular point in the document with a mouse or hyperlink. *Id.*, 1:30-39. "However, people do not find this a particularly convenient way to view a document, as compared with a book." *Id.*, 1:40-42. A book reader is able to flip through the pages, quickly jump to the approximate location of passages of interest, and flip forwards and backwards, useful operations incompatible with existing interfaces for viewing electronic documents. *Id.*, 2:24-62.

68.     The '111 patent describes a mini-book configuration that provides a technical solution to the described problems of existing interfaces in navigating electronic documents. *Id.*, 12:18-33. The '111 patent describes the inventive format or configuration as an improvement over the prior art that allows easy navigation of electronic documents by representing them in book format. *Id.* Compared to inefficient prior art systems, the invention provides familiar operations that enable users to jump through documents similarly to how they would read a book. *Id.*, 12:18-44:50.

**Direct Infringement**

69.     On information and belief, Defendant, without authorization or license from Plaintiff, have been and is presently directly infringing the '111 patent, either literally or

equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using, (including for testing purposes), selling and offering for sale articles infringing one or more claims of the '111 patent.  Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271.  Exemplary infringing instrumentalities include the e-readers available at https://us.kobobooks.com, including but not limited to the Kobo Aura One, Kobo Libra H20, and substantially similar devices ("Accused Instrumentalities").

70.     On information and belief, the Accused Instrumentalities are a non-limiting example that meet all limitations of dependent claim 5 of the '111 patent, either literally or equivalently.

71.     Claim 1 of the '111 patent states:

A computer-readable medium whose contents cause a computer to perform an operation for displaying a portion of a set of information stored in a computer readable memory as a book image format, said portion corresponding to browsing commands output from a user-actuated browsing device, by performing the steps of:

arranging a set of information hosted on a computer into a set of books, each book of said set of books comprising a subset of said set of information;

labeling each book with a respective portion of said subset of said set of information; and

selecting a selected book from the set of books, said selecting step comprising, displaying said respective portions of said books as book document images comprising pages, said pages corresponding to said respective portions of said books,

generating a command for moving through said pages,

displaying an animated image of said pages of said book document being at least one of flipped, scrolled, slid and flashed, on a display, and

selecting said book when one of said pages containing a predetermined portion of said book is displayed in said displaying step.

72.     Specifically, Defendant makes, uses, sells, offers for sale its Accused Instrumentalities which are computer-readable medium whose contents cause a computer to perform an operation for displaying a portion of a set of information stored in a computer readable memory as a book image format, said portion corresponding to browsing commands output from a user-actuated browsing device:



Information is displayed as a book image format:





73.     The Accused Instrumentalities arrange a set of information hosted on a computer into a set of books, each book of said set of books comprising a subset of said set of information:



74.     The Accused Instrumentalities label each book with a respective portion of said subset of said set of information:



75.   The Accused Instrumentalities select **a selected book from the set of books:**



76.    The selection step includes displaying said respective portions of said books as book document images comprising pages, said pages corresponding to said respective portions of said books:



77.    The selection step includes generating a command for moving through said pages:

**Browse through your book**

1. While reading, tap the middle of the screen.
   The Reading Menu will appear.
2. Drag the ⭕ circle icon in the navigation bar left or
   right to skim through the entire book. You'll see a
   page preview in the middle of the screen.



78.   The selection step includes displaying an animated image of said pages of said

book document being at least one of flipped, scrolled, slid and flashed, on a display:



79.   The selection step includes selecting said book when one of said pages

containing a predetermined portion of said book is displayed in said displaying step:



**Willful Infringement**

80.     Defendant has had actual knowledge of the '111 patent since its receipt of notice and licensing letters regarding the Asserted Patents as early as August 2015.

81.     Defendant has had actual knowledge of the '111 patent as of service of this Complaint.

82.     Notwithstanding this knowledge, Defendant continues to knowingly or with reckless disregard willfully infringe the '111 patent.  Defendant has thus had actual notice of infringement of the '111 patent no later than August of 2015 and continue to act despite an objectively high likelihood that its actions constitute infringement of Plaintiff's valid patent rights, either literally or equivalently.

83.     This objective risk was either known or so obvious that it should have been known to Defendant.  Accordingly, Plaintiff seeks enhanced damages and reimbursement of its reasonable attorney fees pursuant to 35 U.S.C. §§ 284 and 285.

**Joint and Indirect Infringement**

84.     Defendant is knowingly inducing its customers and/or end users to directly infringe the '111 patent, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

85.     Defendant's inducement includes, for example, providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe the '207 patent. Defendant's inducement also includes selling products and services, including eBooks, designed to be used with the Accuse Instrumentalities in an infringing manner.  The Accused Instrumentalities are designed in such a way that when they are used for their intended purpose, the user infringes the '207 patent, either literally or equivalently.  Defendant knows and intends

that customers that purchase the Accused Instrumentalities will use those products for their intended purpose.  For example, Defendant's United States website https://us.kobobooks.com instructs customers to use the Accused Instrumentalities in numerous infringing applications. Defendants website also sells eBooks designed to be used with the Accused Instrumentalities in an infringing manner. In addition, Defendant specifically intends that its customers, such as United States distributors, retailers and consumer product companies, will import, use, and sell Accused Instrumentalities in the United States in order to serve and develop the United States market for Defendant's Accused Instrumentalities.

86.     Upon information and belief, Defendant contracts with its customers in a manner that allows Defendant to control its customer's use of the Accused Instrumentalities, such as directing the time of use of the Accused Instrumentalities. For example, Defendant has rental and other agreements with its customers that specify the manner in which the Accused Instrumentalities are to be used which leads to direct infringement of the Accused Instrumentalities.

87.     Defendant has knowingly contributed to direct infringement by its customers by having imported, sold, and/or offered for sale, and knowingly importing, selling, and/or offering to sell within the United States the Accused Instrumentalities which are not suitable for substantial non-infringing use and which are especially made or especially adapted for use by its customers in an infringement of the asserted patent.

88.     As a result of Defendant's infringement, Plaintiff has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT FOUR
## INFRINGEMENT OF U.S. PATENT 7,304,635

89.     Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

90.     The '635 Patent, entitled "Programmable virtual book system", was filed on December 29, 2005 and issued on December 4, 2007.

**Technical Description**

91.     The '635 patent describes a virtual book-like interface for viewing electronic documents stored on a computer. '635 patent, abstract, 1:30-46. According to the '635 patent, existing interfaces for viewing electronic documents required scrolling up or down or jumping to a particular point in the document with a mouse or hyperlink. *Id.*, 1:49-56. "However, people do not find this a particularly convenient way to view a document, as compared with a book." *Id.*, 1:57-59. A book reader is able to flip through the pages, quickly jump to the approximate location of passages of interest, and flip forwards and backwards, useful operations incompatible with existing interfaces for viewing electronic documents. *Id.*, 2:36-3:23.

92.     The '635 patent describes an inventive electronic interface that provides a technical solution to the described problems of existing interfaces in navigating electronic documents. *Id.*, 5:13-6:15. The '635 patent describes the inventive interface as a "virtual book interface" that can be used in conjunction with existing computer and electronic systems to browse documents stored thereon in an efficient manner similar to how one would browse a book. *Id.*, 7:10-30. Compared to inefficient prior art systems, the invention provides familiar operations that enable users to jump through documents similarly to how they would read a book. *Id.*, 7:32-14:37.

**Direct Infringement**

93.     On information and belief, Defendant, without authorization or license from Plaintiff, have been and is presently directly infringing the '635 patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using, (including for testing purposes), selling and offering for sale articles infringing one or more claims of the '635 patent.  Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271.  Exemplary infringing instrumentalities include the e-readers available at https://us.kobobooks.com, including but not limited to the Kobo Aura One, and substantially similar devices ("Accused Instrumentalities").

94.     On information and belief, the Accused Instrumentalities are a non-limiting example that meet all limitations of dependent claim 5 of the '635 patent, either literally or equivalently.

95.     Claim 1 of the '635 patent states:

A method for controlling an electronic book, comprising steps of:

rendering a display of one of an electronic book interface and an electronic book display with an executable program or programs;

controlling at least a display of said electronic book with an electronic book behavior specification, said electronic book behavior specification being data separate from the executable program or programs which render the display of one of the electronic book interface and the electronic book display; said electronic book behavior specification containing both a static specification and a dynamic specification, said dynamic specification configured to allow an electronic book behavior of a displayed electronic book to be initiated or modified via a user-initiated command or an automatically-initiated command.

96.     Specifically, Defendant makes, uses, sells, offers for sale its Accused Instrumentalities that performs a method for controlling an electronic book:



# kobo aura ONE

**$229.99**

Add to Cart

Description | Specs

Designed with the help of our most passionate customers, Kobo Aura ONE was crafted to deliver the absolute best reading experience, period. At Kobo, we are 100% focused on making the reading experience better for Booklovers around the world. With Kobo Aura ONE, we took it one step further. We invited a group of our customers to work alongside us from start to finish. They challenged us to push the limits on screen size, front-light technology and easier access to the stories they love. The result? An eReader unlike any other.

*Price subject to tax and fees.*

*Kobo Aura ONE is only compatible with Kobo Aura ONE accessories.*

*Kobo Gift Cards are not redeemable for eReaders.*

# File formats you can open on your Kobo eReader

For: KOBO MINI, KOBO ORIGINAL / KOBO WI FI, KOBO TOUCH, KOBO TOUCH 2.0, KOBO GLO, KOBO AURA HD, KOBO AURA, KOBO AURA ONE, KOBO AURA EDITION 2, KOBO AURA H2O, KOBO GLO HD

- **Books**: EPUB, EPUB3, PDF, and MOBI
- **Documents**: PDF
- **Images**: JPEG, GIF, PNG, BMP, and TIFF

97.     Defendant's Accused Instrumentalities render a display of an electronic book interface and an electronic book display with an executable program or programs:



As shown above, the Accused Instrumentalities render a display of an e-book interface and display using its dedicated e-reader application.

98.     The Accused Instrumentalities control the display of the electronic book with an electronic book behavior specification:





The Accused Instrumentalities control a display of the eBook (e.g., customize the appearance of an eBook by changing font size, margins, etc.) with an eBook behavior specification or book data. The book data files control how the book is displayed and interacted with the Kobo e-reader application.

99.     The electronic book behavior specification being data separate from the executable program or programs which render the display of one of the electronic book interfaces and the electronic book display:

| Supported formats: | 14 file formats supported natively (EPUB, EPUB3, PDF, MOBI, JPEG, GIF, PNG, BMP, TIFF, TXT, HTML, RTF, CBZ, CBR) Read eBooks borrowed from Public Library |
|---|---|
| Customizability: | TypeGenius: 11 different fonts and over 50 font styles Exclusive font weight and sharpness settings |



The electronic book behavior specification is data separate from the executable program or programs that render the display of the e-book interface and display (e.g., the e-reader application is separate from the Kobo operating system). For example, ePub files include various formatting and display attributes. Each ePub file accordingly has a "book behavior specification" that is "data separate" from the "executable program or programs that render the display."

100.    The electronic book behavior specification of the Accused Instrumentalities contains a static specification:

## File formats you can open on your Kobo eReader

For: KOBO MINI, KOBO ORIGINAL / KOBO WI FI, KOBO TOUCH, KOBO TOUCH 2.0, KOBO GLO, KOBO AURA HD, KOBO AURA, KOBO AURA ONE, KOBO AURA EDITION 2, KOBO AURA H2O, KOBO GLO HD

- **Books**: EPUB, EPUB3, PDF, and MOBI
- **Documents**: PDF
- **Images**: JPEG, GIF, PNG, BMP, and TIFF

The Accused Instrumentalities utilizes ePub files that contain a behavior specification including a static specification to control the display of the e-book. The book behavior specification in an ePub file, for example, includes a "static specification," (e.g., some attributes of an ePub are fixed by its creator in defining the ePub file attributes and cannot be changed and are static.) For example, ePub files specify a "spine element," which defines the linear reading order of the content of the book (e.g., "manifest" item references):

› **3.4.12 The spine Element**

The `spine` element defines the default reading order of the EPUB Publication content by defining an ordered list of manifest item references.

Additionally, ePub files specify a "page-progression-direction" attribute of the spine element, which controls whether the Edge app paginates from left-to-right or right-to-left:

> **page-progression-direction** [optional]
>
> The global direction in which the content flows.
>
> Allowed values are `ltr` (left-to-right), `rtl` (right-to-left) and `default`.
>
> When the `default` value is specified, the Author is expressing no preference and the Reading System MAY chose the rendering direction. This value MUST be assumed when the attribute is not specified.

101.    The electronic book behavior specification of the Accused Instrumentalities contains a dynamic specification, said dynamic specification configured to allow an electronic book behavior of a displayed electronic book to be initiated or modified via a user-initiated command or an automatically-initiated command. The Accused Instrumentalities use compatible ePub files that, for example, have electronic book behavior specifications containing a dynamic specification for displaying electronic books.

In addition, Reading Systems MUST support at least the following **@font-face** font descriptors.

- **font-family**

- **font-style**

- **font-weight**

- **src**

- **unicode-range**

For forwards compatibility with EPUB 2 Reading Systems that do not support **@font-face** rules, authors SHOULD reference a generic font using the **font-family** property.

ePub files' dynamic specification is configured to allow an electronic book behavior of a displayed electronic book to be initiated or modified via a user-initiated command.  This book behavior specifiaction in an ePub file has "dynamic specification" features (e.g., some attributes of an ePub can be modified and are dynamic).  For example, at runtime in the e-reader application, a user can interact dynamically with the settings user interface and change

ePub file attributes, which is also data.

| Customizability: | TypeGenius: 11 different fonts and over 50 font styles |
|---|---|
| | Exclusive font weight and sharpness settings |

For example, ePub files include "font-face" descriptors, such as "font family," that can dynamically specify the style of fonts that the Aura One can use to display the ePub file contents.



### **Willful Infringement**

102.    Defendant has had actual knowledge of the '635 patent since its receipt of notice and licensing letters regarding the Asserted Patents as early as August 2015.

103.    Defendant has had actual knowledge of the '635 patent as of service of this Complaint.

104.    Notwithstanding this knowledge, Defendant continues to knowingly or with reckless disregard willfully infringe the '635 patent.  Defendant has thus had actual notice of infringement of the '635 patent no later than August of 2015 and continue to act despite an objectively high likelihood that its actions constitute infringement of Plaintiff's valid patent rights, either literally or equivalently.

105.    This objective risk was either known or so obvious that it should have been known to Defendant.  Accordingly, Plaintiff seeks enhanced damages and reimbursement of its reasonable attorney fees pursuant to 35 U.S.C. §§ 284 and 285.

**Joint and Indirect Infringement**

106.    Defendant is knowingly inducing its customers and/or end users to directly infringe the '635 patent, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

107.    Defendant's inducement includes, for example, providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe the '207 patent. Defendant's inducement also includes selling products and services, including eBooks, designed to be used with the Accuse Instrumentalities in an infringing manner.  The Accused Instrumentalities are designed in such a way that when they are used for their intended purpose, the user infringes the '207 patent, either literally or equivalently.  Defendant knows and intends that customers that purchase the Accused Instrumentalities will use those products for their intended purpose.  For example, Defendant's United States website https://us.kobobooks.com instructs customers to use the Accused Instrumentalities in numerous infringing applications. Defendants website also sells eBooks designed to be used with the Accused Instrumentalities in an infringing manner. In addition, Defendant specifically intends that its customers, such as United States distributors, retailers and consumer product companies, will import, use, and sell Accused Instrumentalities in the United States in order to serve and develop the United States market for Defendant's Accused Instrumentalities.

108.    Upon information and belief, Defendant contracts with its customers in a manner that allows Defendant to control its customer's use of the Accused Instrumentalities, such as

directing the time of use of the Accused Instrumentalities. For example, Defendant has rental and other agreements with its customers that specify the manner in which the Accused Instrumentalities are to be used which leads to direct infringement of the Accused Instrumentalities.

109.    Defendant has knowingly contributed to direct infringement by its customers by having imported, sold, and/or offered for sale, and knowingly importing, selling, and/or offering to sell within the United States the Accused Instrumentalities which are not suitable for substantial non-infringing use and which are especially made or especially adapted for use by its customers in an infringement of the asserted patent.

110.    As a result of Defendant's infringement, Plaintiff has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT FIVE
## INFRINGEMENT OF U.S. PATENT 7,342,569

111.    Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

112.    The '569 Patent, entitled "Method for flipping pages via electromechanical information browsing device", was filed on October 26, 2005 and issued on March 11, 2008.

**Technical Description**

113.    The '569 patent is directed to a method of flipping pages of an electronic book displayed on a display device. '569 patent, abstract. According to the '569 patent, current methods of viewing electronic documents stored on a computer are cumbersome because users must scroll up or down in the document using, for example, a mouse or follow hyperlinks. *Id*.,

1:44-52. "However, people do not find this a particularly convenient way to view a document, as compared with a book." *Id.*, 1:53-55. A book reader is able to flip through the pages, quickly jump to the approximate location of passages of interest, and flip forwards and backwards, useful operations lacking in conventional computer systems. *Id.*, 2:33-3:20.

114.    The '569 patent is a technical solution to this identified problem that allows users of existing computer systems to navigate electronic documents in a manner akin to how they would browse a book. *Id.*, 10:33-41:20. The invention provides browsing operations, including a complex set of page flipping commands, that enable users to jump through documents similarly to how they would read a book. *Id.*

**Direct Infringement**

115.    On information and belief, Defendant, without authorization or license from Plaintiff, have been and is presently directly infringing the '569 patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using, (including for testing purposes), selling and offering for sale articles infringing one or more claims of the '569 patent.  Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271.  Exemplary infringing instrumentalities include the e-readers available at https://us.kobobooks.com, including but not limited to the Kobo Aura One, Kobo Libra H20, and substantially similar devices ("Accused Instrumentalities").

116.    On information and belief, the Accused Instrumentalities are a non-limiting example that meet all limitations of dependent claim 5 of the '569 patent, either literally or equivalently.

117.    Claim 17 of the '569 patent states:

A computer readable medium encoded with instructions, which when executed by a computer causes the computer to implement a method for flipping pages of an electronic book for presentation on a display, the method comprising steps of:

creating at least one of a set of page flipping commands with an input device;

transmitting the at least one of the set of page flipping commands from the input device to an electronic information processing device that is configured to read data from said computer-readable medium;

activating one of a right side page-launching area displayed on the display and the left side page-launching area displayed on the display to cause a change in a direction of flipping of a trailing page of a set of pages; and

displaying the change in the direction of flipping of the trailing page of the set of pages.

118.    Specifically, Defendant makes, uses, sells, offers for sale its Accused Instrumentalities that are a computer readable medium encoded with instructions, which when executed by a computer causes the computer to implement a method for flipping pages of an electronic book for presentation on a display:



119.    The Accused Instrumentalities create a set of page flipping commands with an input device:

2. Drag the ⊚ circle icon in the navigation bar left or right to skim through the entire book. You'll see a page preview in the middle of the screen.



120.    The Accused Instrumentalities transmit the at least one of the set of page flipping commands from the input device to an electronic information processing device that is configured to read data from the computer-readable medium:



The page flipping commands are transmitted to a processor and then displayed, as shown above.

121.   The Accused Instrumentalities activate one of a right side page-launching area displayed on the display and the left side page-launching area displayed on the display to cause a change in a direction of flipping of a trailing page of a set of pages:



122.   The Accused Instrumentalities display the change in direction of flipping of the trailing page of the set of pages:

**Quick page turn**: To rapidly skip pages, press and hold either of the page turn buttons. This can be useful when you want to skim through the book.

The Accused Instrumentalities allow the direction of flipping to be changed as indicated by the display of the change in the direction of the page turn buttons indicated on the right side or left side page launching areas.

**<u>Willful Infringement</u>**

123.   Defendant has had actual knowledge of the '569 patent since its receipt of notice and licensing letters regarding the Asserted Patents as early as August 2015.

124.    Defendant has had actual knowledge of the '569 patent as of service of this Complaint.

125.    Notwithstanding this knowledge, Defendant continues to knowingly or with reckless disregard willfully infringe the '569 patent.  Defendant has thus had actual notice of infringement of the '569 patent no later than August of 2015 and continue to act despite an objectively high likelihood that its actions constitute infringement of Plaintiff's valid patent rights, either literally or equivalently.

126.    This objective risk was either known or so obvious that it should have been known to Defendant.  Accordingly, Plaintiff seeks enhanced damages and reimbursement of its reasonable attorney fees pursuant to 35 U.S.C. §§ 284 and 285.

**Joint and Indirect Infringement**

127.    Defendant is knowingly inducing its customers and/or end users to directly infringe the '569 patent, with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

128.    Defendant's inducement includes, for example, providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe the '207 patent. Defendant's inducement also includes selling products and services, including eBooks, designed to be used with the Accuse Instrumentalities in an infringing manner.  The Accused Instrumentalities are designed in such a way that when they are used for their intended purpose, the user infringes the '207 patent, either literally or equivalently.  Defendant knows and intends that customers that purchase the Accused Instrumentalities will use those products for their intended purpose.  For example, Defendant's United States website https://us.kobobooks.com instructs customers to use the Accused Instrumentalities in numerous infringing applications.

Defendants website also sells eBooks designed to be used with the Accused Instrumentalities in an infringing manner. In addition, Defendant specifically intends that its customers, such as United States distributors, retailers and consumer product companies, will import, use, and sell Accused Instrumentalities in the United States in order to serve and develop the United States market for Defendant's Accused Instrumentalities.

129.    Upon information and belief, Defendant contracts with its customers in a manner that allows Defendant to control its customer's use of the Accused Instrumentalities, such as directing the time of use of the Accused Instrumentalities. For example, Defendant has rental and other agreements with its customers that specify the manner in which the Accused Instrumentalities are to be used which leads to direct infringement of the Accused Instrumentalities.

130.    Defendant has knowingly contributed to direct infringement by its customers by having imported, sold, and/or offered for sale, and knowingly importing, selling, and/or offering to sell within the United States the Accused Instrumentalities which are not suitable for substantial non-infringing use and which are especially made or especially adapted for use by its customers in an infringement of the asserted patent.

131.    As a result of Defendant's infringement, Plaintiff has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## VI.  NOTICE

132.    Plaintiff has complied with the notice requirement of 35 U.S.C. § 287 and does not distribute, sell, offer for sale, or make products embodying the Asserted Patents.

## VI.  JURY DEMAND

133.     Plaintiff demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to Fed. R. Civ. P. 38.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and seeks relief against Defendant as follows:

A.     That the Court determine that one or more claims of the Asserted Patents are infringed by Defendant, both literally and under the doctrine of equivalents;

B.     That the Court determine that one or more claims of the Asserted Patents are indirectly infringed by Defendant;

C.     That the Court award damages adequate to compensate Plaintiff for the patent infringement that has occurred, together with prejudgment and post-judgment interest and costs, and an ongoing royalty for continued infringement;

D.     That the Court permanently enjoin Defendant pursuant to 35 U.S.C. § 283;

E.     A finding that this case is exceptional pursuant to 35 U.S.C. § 285;

F.     That the Court order Defendant to reimburse Plaintiff for its reasonable attorney fees pursuant to 35 U.S.C. § 285;

G.     That the Court determine that Defendant's infringements were willful;

H.     That the Court award enhanced damages against Defendant pursuant to 35 U.S.C. § 284 and § 285; and

I.   That the Court award such other relief to Plaintiff as the Court deems just

and proper.

Dated: February 7, 2020                    Respectfully submitted,

*/s/ Bradley D. Liddle*
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterarnett.com
Bradley D. Liddle
Texas Bar No. 24074599
Scott W. Breedlove
Texas Bar No. 00790361
sbreedlove@carterarnett.com
Joshua J. Bennett
Texas Bar No. 24059444
jbennett@carterarnett.com
Minghui Yang
Texas Bar No. 24091486
myang@carterarnett.com
**CARTER ARNETT, PLLC**
8150 N. Central Expy, Suite 500
Dallas, Texas 75206
Telephone No. (214) 550-8188
Facsimile No. (214) 550-8185

**ATTORNEYS FOR SINOSTAR
GLOBAL LTD**