**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| SINOSTAR GLOBAL LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 4:20-cv-00096-ALM |
| RAKUTEN KOBO, INC., | PATENT CASE |
| Defendant. | JURY TRIAL REQUESTED |

**DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................... 1

II. STATEMENT OF FACTS ........................................................................................ 1

III. LEGAL STANDARDS ............................................................................................. 9

    A.  Pleading Requirements for Infringement Claims ................................................ 9

    B.  Abstract Subject Matter Is Ineligible for Patenting Under 35 U.S.C. §101 ..... 10

    C.  Patent Ineligibility May Be Resolved on a Motion to Dismiss ........................ 12

IV. ARGUMENT ........................................................................................................... 14

    A.  Sinostar's Claim for Infringement of the '207 Patent Should Be Dismissed ... 14

        1.  Sinostar fails to plausibly allege that the Accused Instrumentalities practice each and every limitation of asserted claim .................................................................................... 14

        2.  Sinostar's allegations of willful infringement are deficient and should be dismissed .................................................................... 18

    B.  Sinostar's Claim for Infringement of the '569 Patent Should Be Dismissed ... 19

        1.  Sinostar fails to plausibly allege that the Accused Instrumentalities practice each and every limitation of asserted claim .................................................................................... 19

        2.  Sinostar's allegations of willful infringement are deficient and should be dismissed .................................................................... 20

        3.  The '569 Patent claims unpatentable subject matter ........................... 20

    C.  Sinostar's Claim for Infringement of the '111 Patent Should Be Dismissed ... 22

        1.  Sinostar fails to plausibly allege that the Accused Instrumentalities practice each and every limitation of asserted claim .................................................................................... 22

        2.  Sinostar's allegations of willful infringement are deficient and should be dismissed .................................................................... 23

        3.  The '111 Patent claims unpatentable subject matter ........................... 23

    D.  Sinostar's Claim for Infringement of the '596 Patent Should Be Dismissed ... 24

i

1.      Sinostar fails to plausibly allege that the Accused Instrumentalities practice each and every limitation of asserted claim.....................................................................24

2.      Sinostar's allegations of willful infringement are deficient and should be dismissed............................................................26

3.      The '596 Patent claims unpatentable subject matter..........................26

E.      Sinostar's Claim for Infringement of the '635 Patent Should Be Dismissed...27

1.      Sinostar fails to plausibly allege that the Accused Instrumentalities practice each and every limitation of asserted claim.....................................................................27

2.      Sinostar's allegations of willful infringement are deficient and should be dismissed............................................................28

3.      The '635 Patent claims unpatentable subject matter..........................29

V.      CONCLUSION..............................................................................30

## **TABLE OF AUTHORITIES**

**Cases**                                                                              **Page(s)**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016)...................................................................10

*Alcon Research Ltd. v. Barr Labs., Inc.,*
    745 F.3d 1180 (Fed. Cir. 2014)...................................................................12

*Alice Corp. v. CLS Bank Int'l,*
    573 U.S. 208 (2014).............................................................................10, 11

*Amdocs (Israel) Ltd. v. Openet Telecom. Inc.,*
    841 F.3d 1288 (Fed. Cir. 2016)...................................................................10

*Ashcroft v. Iqbal,*
    207 U.S. 662 (2009).....................................................................................9

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC,*
    915 F.3d 743 (Fed. Cir. 2019).....................................................................12

*Bancorp Servs. LLC v. Sun Life Assurance Co. of Can. (U.S.),*
    687 F.3d 1266 (Fed. Cir. 2012)...................................................................13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).....................................................................................9

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018)...................................................................13

*In re Bilski,*
    545 F.3d 943 (Fed. Cir. 2005).....................................................................13

*Bowlby v. City of Aberdeen,*
    681 F.3d 215 (5th Cir. 2012) .......................................................................9

*buySAFE, Inc. v. Google, Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014)...................................................................13

*CellspinSoft, Inc. v. Fitbit, Inc.,*
    927 F.3d 1306 (Fed. Cir. 2019)...................................................................12

*Clear with Computs., LLC v. Altec Indus., Inc.,*
    2015 WL 993392 (E.D. Tex. Mar. 3, 2015),  ............................................13

*Content Extraction & Transmission LLC v. Wells Fargo Bank,*
    776 F.3d 1343 (Fed. Cir. 2014)..............................................................11, 12

*De La Vega v. Microsoft Corp.*,
  2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) .................................................... *passim*

*Dropbox,Inc. v. Synchronoss Techs., Inc.*,
  815 F. App'x 529 (Fed. Cir. 2020) ...................................................................12

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)...................................................................11, 12

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)..........................................................21, 24, 26, 29

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016)..................................................................................18

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017).................................................................11, 12

*M & C Innovations, LLC v. Igloo Prod. Corp.*,
  2018 WL 4620713 (S.D. Tex. Jul. 31, 2018) .........................................................18

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
  2018 WL 8261315 (W.D. Tex. Nov. 30, 2018) ......................................................18

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
  2017 WL 5501489 (D. Del. Nov. 16, 2017) .................................................. *passim*

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018)........................................................................9

*Network Architecture Innovations, LLC v. CC Network Inc.*,
  2017 WL 1398276 (E.D. Tex. Apr. 18, 2017) .......................................................13

*Parity Networks, LLC v. Cisco Sys., Inc.*,
  2019 WL 3940952 (W.D. Tex. July 26, 2019) ......................................................18

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*,
  2016 WL 2742379 (E.D. Tex. May 10, 2016) .......................................................13

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)......................................................................10

*Semantic Search Techs. LLC v. Aldo U.S., Inc.*,
  425 F. Supp. 3d 758 (E.D. Tex. 2019)..........................................................20, 23

*SIPCO, LLC v. Streetline, Inc.*,
  230 F. Supp. 3d 351 (D. Del. 2017)..................................................................9

*In re TLI Commc'ns LLC Patent Litig. v. AV Auto., LLC. et al.*,
    823 F.3d 607 (Fed. Cir. 2016)...............................................................21, 24, 27, 29

*Ultramercial Inc. v. Hulu, Inc.*,
    772 F.3d 709 (Fed. Cir. 2014)...............................................................20, 23, 26, 29

*Uniloc USA, Inc. v. ADP, LLC*,
    279 F.Supp.3d 736 (E.D. Tex. 2017)....................................................................12

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019)............................................................................11

**Statutes**

35 U.S.C. § 101........................................................................................................1, 10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 12

## I.     INTRODUCTION

Plaintiff Sinostar Global Ltd. ("Sinostar") filed its original complaint against Defendant Rakuten Kobo, Inc. ("Rakuten Kobo") on February 7, 2020, alleging infringement of U.S. Patent Nos. 5,909,207 (the "'207 Patent); 7,342,569 (the "'569 Patent"); 7,079,111 (the "'111 Patent"); 7,009,596 (the "'596 Patent"); and 7,304,635 (the "'635 Patent") (collectively, the "Asserted Patents"). (*See* Dkt. No. 1 ("Complaint").) On January 15, 2021, Rakuten Kobo filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim of infringement as to any of the five Asserted Patents. Rather than oppose the motion, Sinostar filed a First Amended Complaint ("FAC") on February 5, 2021. (Dkt. No. 12.) However, with respect to all five of the Asserted Patents, Sinostar's FAC still fails to provide plausible allegations that each and every element of the identified claims is met. Further, the FAC does not change the fact that the claims of at least four of the five Asserted Patents claim nothing more than an abstract concept, which may be implemented on a generic computing device, and are thus invalid as directed to unpatentable subject matter under 35 U.S.C. § 101. Accordingly, like the original Complaint, the FAC fails to plausibly support a claim of infringement against Rakuten Kobo and should be dismissed. And, because Sinostar has already attempted to cure the deficiencies in the original Complaint but failed to do so, Sinostar should not be given leave to try again.

## II.    STATEMENT OF FACTS

The FAC alleges that Rakuten Kobo infringes claim 1 of the '207 Patent, claim 17 of the '569 Patent, claim 1 of the '111 Patent, claim 5 of the '596 Patent, and claim 1 of the '635 Patent. (FAC at ¶¶ 26, 53, 78, 106, 132.)

The '207 Patent, entitled "Browsing System and Method for Computer Information," was filed on August 26, 1996 as application number 08/703,407 and issued on June 1, 1999. The '207 Patent is generally directed to devices and systems for browsing information stored on a computer

based on force applied to a sensor device. Figures 2A & 2B, reproduced below, are illustrative of the alleged invention.



Independent claim 1 of the '207 Patent, which Sinostar has asserted against Rakuten Kobo, recites:

1. A computer-based information browsing device comprising:

> a body having a sensor device disposed on a sensor area of said body that detects a position and a force of an instrument applied to said sensor device;

> at least one set of sensors actuable by said instrument, disposed on said body, and configured to produce at least one state signal when at least one of said set of sensors is actuated by said instrument;

> a transducer circuit connected to said sensor device which converts the force and position detected by said sensor device into at least one transducer signal; and

> an output port which outputs the at least one transducer signal and said at least one state signal to a computer which hosts a set of information, said at least one transducer signal and said at least one state signal forming at least one of a direction of movement command, a change of speed command, a jump to a specified location command, and a bookmark command used by said computer to manipulate a displayed image of said set of information.

2

The '569 Patent, entitled "Method for Flipping Pages Via Electromechanical Information Browsing Device," was filed on October 26, 2005 as application number 11/258,264 and issued on March 11, 2008. The '569 Patent is generally directed to a method and device for controlling various browsing operations for information displayed as an e-book on a display device. Figure 6, reproduced below, is illustrative of the alleged invention.



Figure 6

Independent claim 17 of the '569 Patent, which Sinostar has asserted against Rakuten Kobo, recites:

17. A computer readable medium encoded with instructions, which when executed by a computer causes the computer to implement a method for flipping pages of an electronic book for presentation on a display, the method comprising steps of:

creating at least one of a set of page flipping commands with an input device;

transmitting the at least one of the set of page flipping commands from the input device to an electronic information processing device that is configured to read data from said computer-readable medium;

activating one of a right side page-launching area displayed on the display and the left side page-launching area displayed on the display to cause a change in a direction of flipping of a trailing page of a set of pages; and

displaying the change in the direction of flipping of the trailing page of the set of pages.

The '111 Patent, entitled "Computer Based Browsing Computer Program Product, System and Method," was filed on October 3, 2002 as application number 10/262,960 and issued on July 18, 2006. The '111 Patent is generally directed to systems and methods for arranging information on a computer into a book or set of books and browsing said information. According to the specification, "[t]he mechanisms, methods and processes set forth in the present description may be implemented using a conventional general purpose microprocessor programmed according to the teachings in the present specification, as will be appreciated to those skilled in the relevant art(s)." ('111 Patent at 44:21-25.) Figure 17, reproduced below, is illustrative of the alleged invention.



Independent claim 1 of the '111 Patent, which Sinostar appears to have asserted against Rakuten Kobo,[1] recites:

---

[1] While the FAC instead alleges that that Rakuten Kobo infringes "dependent claim 5 of the '111 patent" (FAC at ¶ 78), there is no claim 5 of the '111 patent. (*See* '111 patent at claims.) Further, the FAC only recites claim 1. (FAC at ¶ 79.)

1. A computer-readable medium whose contents cause a computer to perform an operation for displaying a portion of a set of information stored in a computer readable memory as a book image format, said portion corresponding to browsing commands output from a user-actuated browsing device, by performing the steps of:

arranging a set of information hosted on a computer into a set of books, each book of said set of books comprising a subset of said set of information;

labeling each book with a respective portion of said subset of said set of information; and

selecting a selected book from the set of books, said selecting step comprising,

displaying said respective portions of said books as book document images comprising pages, said pages corresponding to said respective portions of said books,

generating a command for moving through said pages,

displaying an animated image of said pages of said book document being at least one of flipped, scrolled, slid and flashed, on a display, and

selecting said book when one of said pages containing a predetermined portion of said book is displayed in said displaying step.

The '596 Patent, entitled "Programmable Virtual Book System," was filed on January 21, 2004 as application number 10/760,298 and issued on March 7, 2006. The '596 Patent is generally directed to systems and methods for providing a programmable book-like browsing interface that features a book behavior specification that includes a static specification and a dynamic specification. According to the specification, the "virtual book interface" of the alleged invention "can be used in conjunction with existing computer or other electronic system for the purpose of browsing through documents or any information stored in the computer or other electronic system." ('596 Patent at 7:16-21.) The '596 Patent also notes that "[a]ll the functionalities described in FIGS. 6-11 can also be implemented by hard-coding the Book-Viewer Software 410

5

(FIG. 4) to generate the desired behavior and functionalities. Hence, as a result, no programs embedded in the Dynamic Specification Section 435 of the Book Behavior Specification 430 are needed." (*Id.* at 14:12-17.) Figure 4, reproduced below, is illustrative of the alleged invention.



Dependent claim 5 of the '596 Patent, which Sinostar has asserted against Rakuten Kobo, depends from claim 1 and recites:

> 1. A method for controlling an electronic book, comprising steps of:
>
> > controlling at least a display of said electronic book with an electronic book behavior specification, said electronic book behavior specification containing both a static specification and a dynamic specification, said dynamic specification configured to allow an electronic book behavior to be initiated or modified via a user-initiated command or an automatically-initiated command, wherein said step of controlling said electronic book with a dynamic specification comprises at least one of:
> >
> > > controlling event triggered page flipping;
> > >
> > > controlling an electronic book auto-flipping; and
> > >
> > > controlling an electronic book auto-narration.

5. The method of claim 1, wherein said step of controlling said electronic book with a dynamic specification comprises:

> modifying the static specification within the electronic book behavior specification.

The '635 Patent, entitled "Programmable Virtual Book System," was filed on December 29, 2005 as application number 11/319,699, issued on December 4, 2007. The '635 Patent is a continuation of the '596 Patent. The '635 Patent is generally directed to systems and methods for providing a programmable book-like browsing interface that features a book behavior specification that includes a static specification and a dynamic specification. According to the specification, the "virtual book interface" of the alleged invention "can be used in conjunction with existing computer or other electronic system for the purpose of browsing through documents or any information stored in the computer or other electronic system." ('635 Patent at 7:16-21.) The '635 Patent notes that "[a]ll the functionalities described in FIGS. 6-11 can also be implemented by hard-coding the Book-Viewer Software 410 (FIG. 4) to generate the desired behavior and functionalities. Hence, as a result, no programs embedded in the Dynamic Specification Section 435 of the Book Behavior Specification 430 are needed." (*Id.* at 14:11-16.) Figure 4, reproduced below, is illustrative of the alleged invention.



*FIG. 4*

Independent claim 1 of the '635 Patent, which Sinostar appears to have asserted against

Rakuten Kobo,[2] recites:

1. A computer-based information browsing device comprising:

a body having a sensor device disposed on a sensor area of said body that detects a position and a force of an instrument applied to said sensor device;

at least one set of sensors actuable by said instrument, disposed on said body, and configured to produce at least one state signal when at least one of said set of sensors is actuated by said instrument;

a transducer circuit connected to said sensor device which converts the force and position detected by said sensor device into at least one transducer signal; and

an output port which outputs the at least one transducer signal and said at least one state signal to a computer which hosts a set of information, said at least one transducer signal and said at least one state signal forming at least one of a direction of movement command, a change of speed command, a jump to a specified location command, and a bookmark command used by said computer to manipulate a displayed image of said set of information.

---

[2] While the FAC instead alleges that that Rakuten Kobo infringes "dependent claim 5 of the '635 patent" (FAC at ¶ 106), the FAC only recites claim 1 and does not discuss the additional limitation of claim 5. (*See* FAC at ¶¶ 107-113.) Even if Sinostar had alleged infringement with respect to every limitation of claim 5, Rakuten Kobo does not infringe for at least the reasons set forth with respect to claim 1, from which claim 5 depends. ('635 patent at claim 5.)

## III.    LEGAL STANDARDS

### A.    Pleading Requirements for Infringement Claims

Under Federal R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). Although a complaint need not provide detailed factual allegations, the complaint must provide "more than labels and conclusions." *Id*. Instead, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 207 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (internal quotations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012) (quoting *Iqbal*, 207 U.S. at 678). Thus, to plead direct infringement, "[t]he complaint must place the potential infringer on notice of what activity is being accused of infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (internal quotation marks, alterations, and citation omitted).

To provide notice, a plaintiff must generally do more than assert that the product infringes the claim; a plaintiff must show how the defendant plausibly infringes by alleging some facts connecting the allegedly infringing product to the claim elements. *See SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017) (granting the motion to dismiss because "[t]he complaint contains no attempt to connect anything in the patent claims to anything about any of the accused products"); *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *6 (W.D. Tex. Feb. 11, 2020) ("Because Plaintiff does not include even a short written

description of how the accused instrumentalities meet the 'coupling' limitation, his complaint fails to state a claim upon which relief can be granted").

**B.      Abstract Subject Matter Is Ineligible for Patenting Under 35 U.S.C. §101**

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of [the Patent Act]." Claims directed to laws of nature, natural phenomena, and abstract ideas are ineligible for patenting under § 101. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). As the Supreme Court explained in *Alice,* "the abstract ideas category embodies the longstanding rule that an idea of itself is not patentable." *Id.* at 218 (internal quotation marks omitted). In order to distinguish between claims that set forth patent-ineligible subject matter and those that "integrate the building blocks into something more," courts employ a two-part test. *Id.* at 217.

First, the court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. This "step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). Courts must distinguish "ineligible abstract-idea-based solutions implemented with generic technical components in a conventional way from the eligible technology-based solution and software-based invention that improves the performance of the computer system itself." *Amdocs (Israel) Ltd. v. Openet Telecom. Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) (internal quotation marks omitted). If the claims lack the "specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it," they are likely directed at only abstract ideas. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167–68 (Fed. Cir. 2018). Claims that "merely present[] the results of abstract processes of collecting and analyzing

10

information" are directed to abstract ideas. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). "In a similar vein, [the Federal Circuit has] treated analyzing information by steps people [can] go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Id.* at 1354.

Second, if the challenged claims are directed towards a patent-ineligible concept, the court then "consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent eligible application." *Alice*, 573 U.S. at 217 (internal quotation marks omitted). In order to overcome step 2, the claim limitations must contain an inventive concept that "involve[s] more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (internal quotation marks omitted). "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223. Claims that do not require "anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information," fail under *Alice* step two. *Elec. Power*, 830 F.3d at 1355. Further, claim elements described in "purely functional terms" do not provide an inventive concept because they are "not a specific improvement to the way computers operate." *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019) (internal quotation marks omitted); *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) (noting that "organizing, mapping, identifying, defining, detecting, and modifying" are examples of purely functional terms). Rather than providing purely functional terms that "merely describe the functions of the abstract idea

itself, without particularity," *Intellectual Ventures*, 850 F.3d at 1341, claims must specify "how the desired result is achieved" in order to satisfy the *Alice* step two. *Elec. Power*, 830 F.3d at 1355.

### C. Patent Ineligibility May Be Resolved on a Motion to Dismiss

"Patent eligibility under §101 is a question of law based on underlying facts that may be resolved on a Rule 12(b)(6) motion when the undisputed facts require a holding of ineligibility." *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019) (internal citations omitted). To prevent dismissal, allegations that a patent is inventive must be plausible, specific, and tied to an asserted claim. *CellspinSoft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019). With respect to computer technology, raising a factual issue about patent eligibility requires allegations that particular claim elements provide a specific improvement in how the claimed result is achieved. *Dropbox,Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) ("[A]ny allegation about inventiveness, wholly divorced from the claims or the specification does not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are an advance . . . the claims recite, the advance lies entirely in the realm of abstract ideas" and therefore "is ineligible for patenting.") (internal quotations omitted).

On a motion to dismiss, a court only needs to address the patent claims asserted in the complaint. *See, e.g.*, *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014) ("The scope of any judgment should conform to the issues that were actually litigated[.]"); *Uniloc USA, Inc. v. ADP, LLC*, 279 F.Supp.3d 736, 741 (E.D. Tex. 2017) (declining to consider invalidity of unasserted claims) (*rev'd on other grounds*, 772 Fed. App'x 980 (Fed. Cir. 2019). Even when there are multiple asserted claims, courts need not assess each claim individually if "all the claims are 'substantially similar and linked to the same abstract idea.'" *Content Extraction*, 776 F.3d at 1348. The patentee bears the burden of persuading a court that other claims warrant review

independent of a representative claim. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim[.]").

As this court has held, claim construction is not required prior to conducting a § 101 analysis. *See Clear with Computs., LLC v. Altec Indus., Inc.*, No. 6:14-cv-00089, 2015 WL 993392, at *3 (E.D. Tex. Mar. 3, 2015), *aff'd*, 636 F. App'x 1015 (Fed. Cir. 2016); *Network Architecture Innovations, LLC v. CC Network Inc.*, No. 2:16-cv-00914-JRG, 2017 WL 1398276, at *3 (E.D. Tex. Apr. 18, 2017). "Where it is clear that claim construction would not affect the issue of patent eligibility, there is no requirement that the court go through that exercise before addressing the eligibility issue." *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-01559-WCB, 2016 WL 2742379, at *6 (E.D. Tex. May 10, 2016) (citation omitted); *see also In re Bilski*, 545 F.3d 943 , 951 (Fed. Cir. 2005) (finding subject matter patent ineligible without claim construction); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (affirming a district court's finding of invalidity under § 101 at the pleadings stage); *Bancorp Servs. LLC v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) (explaining that the Court "perceive[s] no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101" although "it will ordinarily be desirable—and often necessary[.]").

## IV. ARGUMENT

### A. Sinostar's Claim for Infringement of the '207 Patent Should Be Dismissed

#### 1. Sinostar fails to plausibly allege that the Accused Instrumentalities practice each and every limitation of asserted claim

Sinostar fails to plausibly allege that Rakuten Kobo practices at least the following limitations of asserted claim 1 of the '207 patent: "a sensor device disposed on a sensor area of said body that detects a position and a force of an instrument applied to said sensor device"; "at least one set of sensors actuable by said instrument, disposed on said body, and configured to produce at least one state signal when at least one of said set of sensors is actuated by said instrument"; "a transducer circuit connected to said sensor device which converts the force and position detected by said sensor device into at least one transducer signal"; and "said at least one transducer signal and said at least one state signal forming at least one . . . command used by said computer to manipulate a displayed image of said set of information."

In an attempt to meet the pleading requirements and address the deficiencies in the original Complaint, Sinostar revised its allegations to state the following:

- "[w]hen a user touches the touch screen, the user applies a physical force (*i.e.*, the force applied by the user's thumb) at the position where the user touches the screen. The Accused Instrumentalities has a capacitive touch screen such that when a user touches the screen, the user's applied force is detected by the disturbance in the electrostatic field at that point and the position is detected" (FAC at ¶ 29);

- "when the middle of the screen is pressed, the sensor produces a state signal indicating a state wherein the device has been tapped" (*id.* at ¶ 30); and

- "[t]he transducer signal and state signal provide information to the processor such as the position on the touch screen where a user has applied a force (*i.e.*, a touch) to the device and a state indicated by the interaction. The information provided by the transducer signal and state signal are used to form a specified command, such as jump to the next or previous chapter, based on the position of the applied force and the state" (*id.* ¶ 31).

However, as discussed below, Sinostar's infringement allegations remain deficient.

With respect to the detection of "force," the production of the "state signal," and the role of the "transducer circuit," the FAC parrots the claim language without sufficient explanation as to how the limitations are actually met. (*See, e.g.*, *id.* at ¶¶ 29-31.)

As an initial matter, there is no indication that a "sensor device" detects "a force of an instrument applied to said sensor device." (*See id.*) According to Sinostar's own allegations, the claimed "force" is the *mechanical* force that an instrument applies to an area of the touchscreen. (*See, e.g.*, *id.* at ¶ 29 ("the user *applies a physical force* (*i.e.*, the force applied by the user's thumb) . . . the user's *applied force* is detected.") (emphasis added).) Further, Sinostar's allegations indicate that the "force" of the instrument is distinct from the "position" of the instrument. (*See, e.g.*, *id.* ("the user's applied force is detected . . . *and* the position is detected").) These points are consistent with the specification of the '207 patent, which makes clear that the claimed "force" detected by the sensor device is a quantifiable amount of *mechanical* force. (*See, e.g.*, '207 patent at 5:60-62 ("A sensor area on the sensor surface detects the position of a finger along one direction and *the force of the finger on the sensor area*."); 8:22-24 ("*The force* of the thumb 122 (or one of the other fingers) on the sensor area 121 *dictates how fast* to move through the document."); 8:62-65 ("The speed of movement is preferably *proportional to the force applied*, although other force/speed relationships may be employed successfully"); 10:51-52 ("[T]he speed of movement is *proportional to the force applied* as before."); 11:21-24 ("[M]ovement through the document is initiated (with a speed *proportional to the force applied* . . . ).");17:25-26 ("[I]f the opposing force *is greater than* the other force . . . .") (emphasis added).)

However, the FAC admits that "[t]he Accused Instrumentalities has [sic] a capacitive touch screen" that detects "the disturbance in the electrostatic field at that point and the position." (FAC at ¶ 29.) In other words, the Accused Instrumentalities detect changes in capacitance—*not* the

mechanical force that the user's thumb applies to the screen as required by the claims.[3] Further, regardless of whether the user applies "force" to the touchscreen, the FAC fails to allege, let alone cite to evidence demonstrating, that the device sends any signals based on the mechanical force applied by the user's thumb—as opposed to the disturbance in the electrostatic field—being *detected*. While Sinostar alleges that "the user's applied force is detected *by the disturbance in the electrostatic field"* (*id.* (emphasis added)), Sinostar has not sufficiently alleged that the disturbance in the electrostatic field—an issue that is not discussed *at all* in the '207 patent—is equivalent to the mechanical force applied by the instrument, can be used to determine the mechanical force applied by the instrument, or is in fact used by the Accused Instrumentalities to determine the mechanical force applied by the instrument.

Sinostar's allegations with respect to the claimed "state signal" are similarly deficient. The claim requires "at least one set of sensors actuable by said instrument, disposed on said body, and configured to produce at least one state signal when at least one of said set of sensors is actuated by said instrument." Other than restating the claim language itself, the FAC provides only a single image along with the conclusory statement that, "[f]or example, when the middle of the above screen is pressed, *the sensor* produces a state signal indicating a state wherein the device has been tapped." (*Id.* at ¶ 30.) Setting aside whether this allegation is sufficient to demonstrate the existence of a "state signal"—the term is never used in the specification of the '207 patent—the claim specifically requires that the state signal be produced by "at least one *set of sensors*." And, the FAC fails to allege that there are *multiple* sensors, let alone that at least one *set* of them produces the claimed "state signal." Further, the FAC conflates the claimed "set of sensors . . . disposed *on*

---

[3] "Capacitive" touchscreens are distinct from "resistive" touchscreens, the latter of which function based on a mechanical force applied to the screen. Sinostar's allegations gloss over this distinction and provide no evidence that the capacitive touchscreens of the Accused Instrumentalities detect the pressure of a mechanical force applied by an instrument, as required by the claims.

*said body*" with the separately claimed "sensor device disposed *on a sensor area of said body*." In particular, the FAC alleges that both features—the sensor device *and* the set of sensors—are met by the touchscreen itself. (*See id.* at ¶¶ 30-31.) Thus, even if state signals *were* produced when users tap the touchscreens of the Accused Instrumentalities—which the allegations do not indicate—the FAC would fail to reasonably allege that the full "state signal" limitation is met.

The FAC similarly fails to indicate how the "transducer signal"—which the claim requires to be based in part on force detected—"and the state signal are used to form a specified command." (*Id.*) The FAC alleges that the signals "provide information to the processor such as the position on the touch screen where a user has applied a force (*i.e.,* a touch) to the device and a state indicated by the interaction" and that such information is "used to form a specified command . . . based on the position of the applied force and the state." (*Id.* at ¶ 32.) As explained above, however, the FAC fails to sufficiently allege that the "force" of the instrument—as opposed to simply its "position"—is even detected or that a "set of sensors" produce the claimed "state signal." Further, the FAC merely indicates that—as with all touchscreen eReaders—the user can touch the screen to interact with the device. Merely parroting the claimed language and stating that "information provided by the transducer signal and state signal are used to form a specific command . . . based on the position of the applied force and the state" is not sufficient to demonstrate *how* the signals "form[] at least one . . . command," as required by the claim. And, providing the screenshots in the FAC without an explanation of how the element is met is insufficient to pass muster under Fed. R. Civ. P. 12(b)(6). *See De La Vega*, 2020 WL 3528411, at *7 (dismissing with prejudice). Further, conclusory language merely stating that a defendant infringes is insufficient. *See, e.g.*, *N. Star Innovations, Inc. v. Micron Tech., Inc.*, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) ("There needs to be *some facts* alleged that articulate *why it is plausible* that the other party's product

infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so.") (emphasis in original).

Because it fails to plausibly plead infringement, Count I should be dismissed for failure to state a claim upon which relief can be granted.

### 2. Sinostar's allegations of willful infringement are deficient and should be dismissed

Plaintiff's allegations (*see* FAC at ¶¶ 33-39) do not meet the standard for supporting a claim for willfulness, since the FAC fails to identify any specific "willful, wanton, malicious, bad-faith, deliberate," and/or "consciously wrongful" act on the part of Rakuten Kobo. *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923, 1932 (2016).  Put simply, the FAC fails to provide factual support or reasoning for Sinostar's allegations of willful infringement, let alone "a sufficient articulation of the relevant facts." *Parity Networks, LLC v. Cisco Sys., Inc.,* No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019). Further, Sinostar's allegations are far from the "egregious" infringement behavior required for a finding of willfulness under *Halo*. Accordingly, Sinostar's willfulness allegations with respect the '207 patent should be dismissed. *See, e.g.*, *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1-18-CV-00309-LY, 2018 WL 8261315, at *3–4 (W.D. Tex. Nov. 30, 2018) (dismissing willful infringement claim and agreeing that "the complaint does not allege any facts raising a plausible inference of the egregious behavior required under *Halo*"); *M & C Innovations, LLC v. Igloo Prod. Corp.*, No. 4:17-CV-02372, 2018 WL 4620713, at *5  (S.D. Tex. Jul. 31, 2018) (dismissing willful infringement claim as the patent claims were "garden-variety").

**B.      Sinostar's Claim for Infringement of the '569 Patent Should Be Dismissed**

**1.      Sinostar fails to plausibly allege that the Accused Instrumentalities practice each and every limitation of asserted claim**

Sinostar fails to plausibly allege that Rakuten Kobo practices at least the following limitations of asserted claim 17 of the '569 patent: "activating one of a right side page-launching area displayed on the display and the left side page-launching area displayed on the display to cause a change in a direction of flipping of a trailing page of a set of pages"; and "displaying the change in the direction of flipping of the trailing page of the set of pages."

In an attempt to meet the pleading requirements and address the deficiencies in the original Complaint, Sinostar revised its allegations to state the following:

- "[w]hen accepting page flipping commands, the Accused Instrumentalities display a current page in the background and a trailing page in the foreground" (FAC at ¶ 137).

However, as discussed below, Sinostar's infringement allegations remain deficient.

With respect to the claimed "trailing page," the FAC once again merely parrots the claim language and alleges that the Accused Instrumentalities display page turning and have areas that allow for the user to turn the page. (*See, e.g.*, *id.* at ¶¶ 137-138.) The FAC alleges that, "[w]hen accepting page flipping commands, the Accused Instrumentalities display a current page in the background and a trailing page in smaller view in the foreground . . . [a]ctivation of either the left side or right side page launching areas indicate change in direction of flipping of the trailing page displayed in front of the current page." (*Id.*) Putting aside that the single page "in the foreground" and "in front of the current page" cannot possibly be considered a "*trailing* page" at all—there is no explanation in the FAC—the FAC does not show that a change in direction of "a trailing page *of a set of pages*" is caused or displayed. (*Id.*) As shown in the FAC, only a single page—not a set of pages—is both displayed and flipped. (*Id.* at ¶ 137.) Further, the fact that a user can "rapidly

skip pages" (*id*. at ¶ 138) does not suggest that such pages are being flipped—and being displayed during the flipping process—in the claimed manner. Put simply, the FAC does not provide any explanation as to how these claim limitations are met. *See, e.g.*, *De La Vega*, 2020 WL 3528411, at *7; *N. Star Innovations*, 2017 WL 5501489, at *2.

Because it fails to plausibly plead infringement, Count V should be dismissed for failure to state a claim upon which relief can be granted.

### 2.     Sinostar's allegations of willful infringement are deficient and should be dismissed

Sinostar's willfulness allegations with respect to the '569 Patent are no more substantial than for the '207 Patent. (*See* FAC at ¶¶ 139-143.) Accordingly, for the same reasons discussed above with respect to the '207 Patent (*see supra* at IV.A.2.), Sinostar's allegations of willful infringement are deficient and should be dismissed.

### 3.     The '569 Patent claims unpatentable subject matter

Asserted claim 17 of the '569 Patent claims is directed to the abstract idea of page flipping. Indeed, the claim merely recites a device that was well-known and popular at the time of the alleged invention—an eReader—that is configured to allow a user to virtually flip back and forth through the pages of an eBook in a manner that approximates flipping through a physical book. Further, the claim recites nothing more than that which is "routine," "long prevalent," and "conventional." *See Ultramercial Inc. v. Hulu, Inc.*, 772 F.3d 709, 714 (Fed. Cir. 2014). Flipping pages in a book has of course been known since the invention of the printing press, and merely causing those actions to occur on a computer is not sufficient to create a patentable invention. *See, e.g.*, *Semantic Search Techs. LLC v. Aldo U.S., Inc.*, 425 F. Supp. 3d 758, 774 (E.D. Tex. 2019) ("In the field of computers and telecommunications, claims directed to simply implementing long-standing practices on a computer are not patent-eligible and do not become patent-eligible simply

because such operations are faster or more efficient than the long-standing practice."). Moreover, the claim cannot be said to be "directed to an improvement to computer functionality" *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). While the FAC alleges in conclusory fashion that "[t]he claimed inventive book reader provides a technical solution to prior art computer displays through improved computer input, controls, and UI design" (FAC at ¶ 129), the claim simply recites flipping through pages by activating designated portions of the device.

Further, the claim relies on nothing more than generic elements and functional terms, such as "creating" a page flipping command, "transmitting" a page flipping command, "activating" a page-launching area "to cause a change in direction," and "displaying the change in direction." These generic elements do not provide anything more than the abstract idea of page flipping. In addition, using page flipping commands to perform page flipping does not involve any technological improvement. As such, these elements do not add an inventive step to the abstract idea. *See, e.g.*, *In re TLI Commc'ns LLC Patent Litig. v. AV Auto., LLC. et al.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of well-understood, routine, conventional activities previously known to the industry.") (internal alteration and quotation marks omitted).

Because claim 17 of the '569 Patent fails to include an inventive concept that would transform the abstract idea of page flipping into a patent eligible application, the claim fails the *Alice* test and is invalid under § 101.

### C.     Sinostar's Claim for Infringement of the '111 Patent Should Be Dismissed

#### 1.     Sinostar fails to plausibly allege that the Accused Instrumentalities practice each and every limitation of asserted claim

Sinostar fails to plausibly allege that Rakuten Kobo practices at least the following limitations of asserted claim 1 of the '111 patent: "selecting a selected book from the set of books, said selecting step comprising, displaying said respective portions of said books as book document images comprising pages, said pages corresponding to said respective portions of said books, generating a command for moving through said pages, displaying an animated image of said pages of said book document being at least one of flipped, scrolled, slid and flashed, on a display, and selecting said book when one of said pages containing a predetermined portion of said book is displayed in said displaying step."

In an attempt to meet the pleading requirements and address the deficiencies in the original Complaint, Sinostar revised its allegations to state the following:

- "[t]he User may select any book from a library of books. The selection may occur while one or more books are displayed (*e.g.*, a preview)" (FAC at ¶ 83); and

- "[w]hile the book is being flipped, such as by dragging the circle icon, a flash animation of flipping the currently displayed page is shown" (*id.* at ¶ 86).

However, as discussed below, Sinostar's infringement allegations remain deficient.

With respect to the selection "of said book," the FAC once again merely parrots the claim language and alleges that the Accused Instrumentalities allow a user to view portions of a book before selecting it. (*See, e.g., id.* at ¶ 87.) As is clear from the claim language, however, the step of "selecting said book" must occur *during* the claimed "displaying" step—i.e., while the device is "displaying an animated image of said pages of said book document being at least one of flipped, scrolled, slid, and flashed, on a display and […] when one of said pages containing a predetermined portion of said book is displayed in said displaying step." The FAC provides no indication at all

22

that the step of "selecting said book" occurs during the display of such an animation—if such an animation even exists—by the Accused Instrumentalities. (*See id*.) In fact, the FAC improperly separates these two elements of the "selection" step. (*See id*. at ¶¶ 86-87.) Further, the mere fact that a user may be able to view the pages of a book being flashed on the screen" (*id*. at ¶ 86)—or that "[w]hile the book is being flipped, such as by dragging the circle icon, a flash animation of flipping the current displayed page is shown" (*id.*)—does not plausibly demonstrate that a user can do so *before* the book has already been "selected," as required by the claim. In short, the FAC does not provide sufficient explanation as to how this claim limitation is met. *See, e.g.*, *De La Vega*, 2020 WL 3528411, at *7; *N. Star Innovations*, 2017 WL 5501489, at *2.

Because it fails to plausibly plead infringement, Count III should be dismissed for failure to state a claim upon which relief can be granted.

### 2.     Sinostar's allegations of willful infringement are deficient and should be dismissed

Sinostar's willfulness allegations with respect to the '111 Patent are no more substantial than for the '207 Patent. (*See* FAC at ¶¶ 88-92.) Accordingly, for the same reasons discussed above with respect to the '207 Patent (*see supra* at IV.A.2.), Sinostar's allegations of willful infringement are deficient and should be dismissed.

### 3.     The '111 Patent claims unpatentable subject matter

Asserted claim 1 of the '111 Patent is directed to the abstract idea of selecting a book based on the content viewed when moving through its pages. The claim recites nothing more than that which is "routine," "long prevalent," and "conventional." *See Ultramercial*, 772 F.3d at 714. Selecting a book by moving through its pages to get a sense of the book has of course been known for a long time prior to the alleged invention, and merely causing those actions to occur on a computer is not sufficient to create a patentable invention. *See, e.g.*, *Semantic Search*, 425 F. Supp.

3d at 774. Moreover, the claim cannot be said to be "directed to an improvement to computer functionality" *Enfish*, 822 F.3d at 1335 (Fed. Cir. 2016). While the FAC alleges in conclusory fashion that "[t]he claimed inventive book reader provides a technical solution to prior art computer displays through improved computer input, controls, and UI design" (FAC at ¶ 75), the claim simply recites the organization of eBooks and the selection of a given eBook when an animation of the pages being flipped, scrolled, slid, or flashed reaches a predetermined portion of the eBook.

Further, the claim relies on nothing more than generic elements and functional terms, such as "arranging a set of information," "labeling each book," "selecting a book," and "displaying" portions of the books. These generic elements do not provide anything more than the idea of selecting a book based on the content viewed when flipping through its pages. In addition, arranging the books and displaying their content prior to selection does not involve any technological improvement. As such, these elements do not add an inventive step to the abstract idea. *See, e.g.*, *In re TLI*, 823 F.3d at 613.

Because claim 1 of the '111 Patent fails to include an inventive concept that would transform the abstract idea of selecting a book based on the content viewed when moving through its pages, the claim fails the *Alice* test and is invalid under § 101.

### D.   Sinostar's Claim for Infringement of the '596 Patent Should Be Dismissed

#### 1.   Sinostar fails to plausibly allege that the Accused Instrumentalities practice each and every limitation of asserted claim

Sinostar fails to plausibly allege that Rakuten Kobo practices at least the following limitations of asserted claim 5 of the '596 patent: "said electronic book behavior specification containing both a static specification and a dynamic specification, said dynamic specification

configured to allow an electronic book behavior to be initiated or modified via a user-initiated command or an automatically-initiated command."

In an attempt to meet the pleading requirements and address the deficiencies in the original Complaint, Sinostar revised its allegations to state the following:

- "Dynamic specifications are the Accused Instrumentalities non-default specifications that may be adjusted, either by the user or automatic device commands" (FAC at ¶ 57).

However, as discussed below, Sinostar's infringement allegations remain deficient.

Sinostar fails to plausibly allege infringement because, with respect to the claimed "dynamic specification configured to allow an electronic book behavior to be initiated or modified," the FAC merely parrots the claim language and alleges that the Accused Instrumentalities allow users to modify certain default settings (e.g., page controls and font size). (*See, e.g., id.* at ¶¶ 57-58.) The FAC alleges that "[d]ynamic specifications are the Accused Instrumentalities' non-default specifications that may be adjusted, either by the user or automatic device commands" (*Id* at ¶ 57.) However, this characterization of the "dynamic specification" as being the adjustable or modifiable specification is not informative with respect to what the "dynamic specification" is or how it differs from the "static specification," which the FAC *also* alleges "can be modified." (*See, e.g., id.*at ¶ 58.) Further, there is no explanation as to why the ability to modify default settings indicates the use of such a "dynamic specification." (*See id.* at ¶¶ 57-58.) Further, the specification of the '596 Patent notes that the behaviors and functionalities provided by the dynamic specification can be implemented by other means, such as "hard-coding the Book-Viewer Software." ('596 Patent at 14:12-17.) As such, the mere fact that certain default settings can be modified does not suggest that such modifications are allowed or performed by a "dynamic specification," as required by the claim. Put simply, the FAC does not provide sufficient

explanation as to how this claim limitation is met. *See, e.g.*, *De La Vega*, 2020 WL 3528411, at *7; *N. Star Innovations*, 2017 WL 5501489, at *2.

Because it fails to plausibly plead infringement, Count II should be dismissed for failure to state a claim upon which relief can be granted.

### 2. Sinostar's allegations of willful infringement are deficient and should be dismissed

Sinostar's willfulness allegations with respect to the '596 Patent are no more substantial than for the '207 Patent. (*See* FAC at ¶¶ 59-63.) Accordingly, for the same reasons discussed above with respect to the '207 Patent (*see supra* at IV.A.2.), Sinostar's allegations of willful infringement are deficient and should be dismissed.

### 3. The '596 Patent claims unpatentable subject matter

Asserted claim 5 of the '596 Patent is directed to the abstract idea of modifying book specifications to suit reader preferences. Indeed, the claim merely recites what was well-known and popular at the time of the alleged invention—devices that are configured to allow them or their users to modify the ways in which content is displayed. Further, the claim recites nothing more than that which is "routine," "long prevalent," and "conventional." *See Ultramercial*, 772 F.3d at 714. Moreover, the claim cannot be said to be "directed to an improvement to computer functionality" *Enfish*, 822 F.3d at 1335 (Fed. Cir. 2016). While the FAC alleges in conclusory fashion that "[t]he claimed inventive book reader provides a technical solution to prior art computer displays by improving the configurability of the display and interactivity with external programs and applications" (FAC at ¶ 50), the claim simply recites the display of an electronic book and modification of the same—including, according to Sinostar, concepts such as changing page controls and font settings that were already commonly available in word processors and other screen display technologies.

Further, the claim relies on nothing more than generic elements and functional terms, such as "controlling" the displaying and the dynamic specification being "configured to allow" the book behavior to be initiated or modified. These generic elements do not provide anything more than the idea of modifying book specifications to suit reader preferences. In addition, displaying eBooks and modifying the display does not involve any technological improvement, as the claimed functionalities (e.g., controlling auto-flipping) and the functionalities identified in the FAC (e.g., changing font size) were already readily available for electronic books. As such, these elements do not add an inventive step to the abstract idea. *See, e.g.*, *In re TLI*, 823 F.3d at 613.

Because claim 5 of the '596 Patent fails to include an inventive concept that would transform the abstract idea of selecting a book based on the content viewed when flipping through its pages, the claim fails the *Alice* test and is invalid under § 101.

### E.   Sinostar's Claim for Infringement of the '635 Patent Should Be Dismissed

#### 1.   Sinostar fails to plausibly allege that the Accused Instrumentalities practice each and every limitation of asserted claim

Sinostar fails to plausibly allege that Rakuten Kobo practices at least the following limitations of asserted claim 1 of the '635 patent: "said electronic book behavior specification containing both a static specification and a dynamic specification, said dynamic specification configured to allow an electronic book behavior of a displayed electronic book to be initiated or modified via a user-initiated command or an automatically-initiated command."

In an attempt to meet the pleading requirements and address the deficiencies in the original Complaint, Sinostar revised its allegations to state the following:

- "Dynamic specifications are the Accused Instrumentalities non-default specifications that may be adjusted, either by the user or automatic device commands" (FAC at ¶ 113).

However, as discussed below, Sinostar's infringement allegations remain deficient.

As with the '596 Patent, Sinostar fails to plausibly allege infringement with respect to the claimed ability to "allow an electronic book behavior of a displayed electronic book to be initiated or modified." Rather, the FAC merely parrots the claim language and alleges that the Accused Instrumentalities feature adjustable specifications and can utilize ePub files that allow for certain attributes to be changed (e.g., font). (*See, e.g.*, *id.*.) The FAC alleges that "[d]ynamic specifications are the Accused Instrumentalities' non-default specifications that may be adjusted, either by the user or automatic device commands" and that the "book behavior specification in an ePub file has 'dynamic specification' features (e.g., some attributes of an ePub can be modified and are dynamic). (*Id.*) However, this characterization of the "dynamic specification" as being the adjustable or modifiable specification is not informative with respect to what the "dynamic specification" is or how it differs from the "static specification," which the FAC *also* alleges "can be modified." (*See, e.g.*, *id.*at ¶ 58.) Further, the '635 Patent also discloses that that the behaviors and functionalities provided by the dynamic specification can be implemented by other means, such as "hard-coding the Book-Viewer Software." ('635 Patent at 14:11-16.) As such, the mere fact that some attributes can be modified does not suggest that such modifications are allowed or performed by a "dynamic specification," as required by the claim. In short, the FAC does not provide any explanation as to how this claim limitation is met. *See, e.g.*, *De La Vega*, 2020 WL 3528411, at *7; *N. Star Innovations*, 2017 WL 5501489, at *2.

Because it fails to plausibly plead infringement, Count IV should be dismissed for failure to state a claim upon which relief can be granted.

### 2. Sinostar's allegations of willful infringement are deficient and should be dismissed

Sinostar's willfulness allegations with respect to the '635 Patent are no more substantial than for the '207 Patent. (*See* FAC at ¶¶ 102-105.) Accordingly, for the same reasons discussed

above with respect to the '207 Patent (*see supra* at IV.A.2.), Sinostar's allegations of willful infringement are deficient and should be dismissed.

### 3.     The '635 Patent claims unpatentable subject matter

Asserted claim 1 of the '635 Patent is directed to the abstract idea of modifying book specifications to suit reader preferences. Indeed, the claim merely recites what was well-known and popular at the time of the alleged invention, devices that are configured to allow them or their users to modify the ways in which content is displayed. Further, the claim recites nothing more than that which is which is "routine," "long prevalent," and "conventional." *See Ultramercial*, 772 F.3d at 714. Moreover, the claim cannot be said to be "directed to an improvement to computer functionality" *Enfish*, 822 F.3d at 1335 (Fed. Cir. 2016). While the FAC alleges in conclusory fashion that "[t]he claimed inventive book reader provides a technical solution to prior art computer displays by improving the configurability of the display and interactivity with external programs and applications" (FAC at ¶ 103), the claim simply recites the display of an electronic book and modification of the same—including, according to Sinostar, concepts such as changing page controls and font settings that were already commonly available in word processors and other screen display technologies.

Further, the claim relies on nothing more than generic elements and functional terms, such as "controlling" the displaying and the dynamic specification being "configured to allow" the book behavior to be initiated or modified. These generic elements do not provide anything more than the idea of modifying book specifications to suit reader preferences. In addition, displaying eBooks and modifying the display does not involve any technological improvement. As such, these elements do not add an inventive step to the abstract idea. *See, e.g.*, *In re TLI,* 823 F.3d at 613.

Because claim 1 of the '635 Patent fails to include an inventive concept that would transform the abstract idea of selecting a book based on the content viewed when flipping through its pages, the claim fails the *Alice* test and is invalid under § 101.

## V.    CONCLUSION

For the foregoing reasons, Rakuten Kobo respectfully requests that the Court grant its motion and dismiss Sinostar's FAC in its entirety for failure to plausibly state a claim for relief.


Dated: February 26, 2021                          GREENBERG TRAURIG, LLP

                                                  By: */s/ Joshua L. Raskin*
                                                  Joshua L. Raskin
                                                  RaskinJ@gtlaw.com
                                                  Greenberg Traurig, LLP
                                                  MetLife Building
                                                  200 Park Avenue
                                                  New York, NY 10166
                                                  Telephone: (212) 801-9200

                                                  *Attorneys for Defendant Rakuten Kobo, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of February 2021, I caused the above **DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)** to be served on all parties in this action via the Court's CM/ECF system:


/s/ *Joshua L. Raskin*
Joshua L. Raskin

31